UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA


GABER A. AZIZ,                          )
                                       )
                 Plaintiff,            )
                                       )          No. 1:04-CV-88
v.                                     )
                                       )          Judge Curtis L. Collier
                                       )
DOLLAR TREE STORES, INC.               )
                                       )
                 Defendant.            )


# M E M O R A N D U M

Defendant Dollar Tree Stores, Inc. ("Defendant") has filed a Motion to Dismiss (Court File No. 27) with a supporting memorandum and documents (Court File No. 28 and exhibits). Plaintiff Gaber A. Aziz ("Plaintiff") filed a response and affidavit in support of the response (Court File No. 29) and Defendant filed a reply brief (Court File No. 31). The Court has considered all of the foregoing, and for the following reasons will **DENY** Defendant's motion to dismiss (Court File No. 27).

Defendant also has filed a Motion for Summary Judgment (Court File No. 32), with a supporting memorandum and documentation (Court File No. 41 and exhibits thereto). Plaintiff filed a response and supporting documentation (Court File No. 42 and exhibits thereto), and Defendant filed a reply brief with further exhibits (Court File No. 43 and exhibits thereto). After considering all of these submissions, the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 32) and will **DISMISS** all of Plaintiff's claims.

# I.     STANDARD OF REVIEW

## A.     Motion to Dismiss

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) requires the Court to determine whether the plaintiff has alleged sufficient facts to support the Court's exercise of personal jurisdiction over the defendant. The Court may determine a Rule 12(b)(2) motion on the basis of written submissions alone, or it may conduct an evidentiary hearing on the merits of the motion. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). Although the plaintiff always bears the burden of establishing personal jurisdiction, the weight of this burden depends on the Court's handling of the motion. *Id.*

If the Court relies on an evidentiary hearing or defers its decision until trial, the plaintiff must prove jurisdiction by a preponderance of the evidence. *Id.*; *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988). However, if the Court rules without an evidentiary hearing, the plaintiff bears a considerably lighter burden. In such a case, "the plaintiff may not rest on his pleadings to answer the movant's affidavits, but must set forth, 'by affidavit or otherwise, . . . specific facts showing that the court has jurisdiction.'" *Serras*, 875 F.2d at 1214 (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)). When the Court relies on these written submissions alone, the plaintiff need only present a *prima facie* case for jurisdiction. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997); *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 792 (6th Cir. 1996). In weighing the written submissions, the Court should consider the pleadings and affidavits in the light most favorable to the plaintiff. *Nationwide Mut. Ins.*, 91 F.3d at 792. If the plaintiff meets his "relatively slight" burden, *Am. Greetings*, 839 F.2d at 1169, "the motion to dismiss should be denied, 'notwithstanding any controverting presentation by the moving party.'" *Serras*, 875 F.2d at 1214 (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d

899, 904 (2d Cir. 1981)).

Even if the Court denies a defendant's pretrial Rule 12(b)(2) motion without a hearing, the defense of lack of personal jurisdiction is not foreclosed. *Serras*, 875 F.2d at 1214. Rather, "[w]hat is settled is the court's power to exercise personal jurisdiction over a defendant, nothing more." *Id.* at 1214-15 (internal quotation omitted).

### B.      Motion for Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issue of material fact exists, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323, 106 S.Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct.

2505, 2511, 91 L. Ed. 2d 202 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.    RELEVANT FACTS

Plaintiff was born on March 29, 1946 in Egypt, and immigrated to the United States in 1979 (Court File No. 41, Exh. B; Court File No. 42 Exh. 1, Deposition of Gaber A. Aziz ("Aziz Depo."), p. 14). Plaintiff began working for Defendant as a store manager in 1993, when he was 47 years old (Court File No. 41, p. 2). Plaintiff worked at several different stores as store manager, then was promoted to district manager in 2000, at age 54, in which position he oversaw 13 stores in the Chattanooga and north Georgia areas (Aziz Depo. at 34, 37-38, 46). After he was promoted in 2000, Plaintiff's supervisor, regional director Robert Volz, asked Plaintiff to travel to Atlanta on several occasions to help bring stores up to Defendant's standards (*Id.* at 69; Court File No. 42, Exh. 3, Affidavit of Gaber Aziz ("Aziz Aff. 1") ¶ 2). While he was there, Plaintiff overheard Atlanta-area district managers discussing their base salaries, which were higher than his (Aziz Depo. at 72-73; Aziz Aff. 1 ¶ 2). Plaintiff believed this disparity might be due to his national origin or age (Aziz

Aff. 1 ¶ 2). Plaintiff spoke with Volz about the disparity several times in 2000 and 2001, and asked Volz if he was being discriminated against (*Id*.; Aziz Depo. at 85-86). Defendant sets base salaries for district managers within a range that varies by region of the country and also by whether the district is rural or metropolitan (Court File No. 41, Exh. 2, Deposition of Robert Volz ("Volz Depo."), p. 69). Volz told Plaintiff equalizing his salary with those of the Atlanta-area district managers was "out of his league" but agreed to talk to his supervisor, Larry Benson, about it (Aziz Depo. at 86). Volz also offered Plaintiff the opportunity to interview for a district manager position in Atlanta the next time one became available, "because we paid more in Atlanta" (Volz Depo. at 84). Plaintiff did not receive a raise or other compensation to equalize his base salary with those of Atlanta-area district managers and did not interview for an Atlanta district manager position (*Id*.; Aziz Depo. at 89).

In February or March 2001, Defendant realigned the stores within its districts, including Plaintiff's district, because an additional district manager position was added within the region; as a result, the number of stores Plaintiff oversaw dropped from 13 to nine (*Id*. at 97; Aziz Aff. 1 ¶ 2; Volz Depo. at 134). Some stores Plaintiff characterizes as his "highest-producing stores" were removed from his district, and several "lower-producing stores" were added to his district (Aziz Aff. 1 ¶ 2). Plaintiff states this realignment affected his ability to achieve the same level of sales-based bonuses he had achieved previously with 13 stores (*Id*.).

Plaintiff asserts in 2001 through 2002, Volz began placing demands on him which were difficult or impossible to meet; Plaintiff believes he "was being set up to fail" (*Id*. ¶¶ 3-6). Volz gave Plaintiff a negative performance review in early 2002, as a result of which he received a 2.5% pay raise, as opposed to the 6% pay raise he received the previous year, which Plaintiff believes was

"part of Mr. Volz's ongoing pattern of punishment and retaliation against me for raising questions about discriminatory pay disparities" (*Id*. ¶ 8, *see also* Exh. B thereto). Plaintiff complained to Defendant's human resources department in 2002 about his perception of "discriminatory and unfair treatment" in connection with the district realignment, and after the "unfair annual performance evaluation" by Volz in 2002 (*Id*. ¶6). Additionally, Plaintiff drafted in November 2002 and sent on January 27, 2003 a letter to Macon Brock, one of Defendant's officers, outlining his work history with Defendant and complaining about Volz's "unfair" evaluation of him in 2002 and his new supervisor, regional director Willis Scott's, poor communications skills and unfair treatment of him and his subordinates (Exh. 1 to Court File No. 42, marked as Exh. 28 to Aziz Depo.). This letter did not include any allegations of discrimination on any basis.

In January 2003, Plaintiff was demoted from district manager to store manager, without any change in his base pay, because of the performance of stores in his district in the previous two years (Aziz Depo. at 151; Volz Depo. at 192). However, Plaintiff did lose some financial benefits associated with being a district manager, such as eligibility to receive district manager bonuses and stock options and the use of a company vehicle (Aziz Aff. 1 ¶ 18). Around this same time, Volz moved back to the regional director position that included overseeing the store Plaintiff was managing (*Id*. ¶ 11). In February 2003, at a meeting to discuss the new district manager who took Plaintiff's place, Volz made comments singling out Plaintiff for poor management of the district and stated Plaintiff would not be happy to see Volz returning to manage the district as regional director, but that Plaintiff's job as store manager was secure (Aziz Depo. at 190-92).

Defendant then, in June 2003, transferred Plaintiff from the store he had been managing in Hixson, Tennessee to another, smaller store located approximately 2.5 miles away but still in

Hixson, Tennessee (Aziz Aff. 1 ¶ 12; Volz Depo. at 209). His compensation did not change as a result of this transfer (Volz Depo. at 210). However, Plaintiff states the smaller store "had lower sales volume, was very dirty, lacked adequate merchandise, was not making money, and was known to be 'about to go out of business'" (Aziz Aff. ¶ 14). Plaintiff also asserts this transfer "had the potential to cost me opportunities for store manager performance bonuses," because the larger store had more sales volume and was in better condition, offering a better opportunity for sales-based bonuses (*Id*.). Defendant states Plaintiff's bonus potential could have increased when he moved to the smaller store, because it calculates bonuses based on any increase in sales over the previous year's sales (Volz Depo. at 207).

Plaintiff filed a charge of discrimination based on national origin and age jointly with the Tennessee Human Rights Commission ("THRC") and the Equal Employment Opportunity Commission ("EEOC") on December 16, 2003 (*see* Exh. to Court File No. 33, marked Exh. 24 to Aziz Depo.). Plaintiff received a right-to-sue letter from the EEOC on December 31, 2003 (Court File No. 1, Complaint, ¶ 5).

Plaintiff filed a Chapter 13 bankruptcy petition in February 2004; he was represented by attorney Shannon Clark in this filing (Court File No. 29, Exhibit 1, Affidavit of Gaber A. Aziz ("Aziz Aff. 2") ¶ 2). Plaintiff disclosed the facts he had filed a charge with the THRC and EEOC against Defendant and had received a right-to-sue letter to Ms. Clark, who told him "something to the effect that since the claims were unknown and contingent, they did not need to be listed in my bankruptcy filings" (Aziz Aff. 2 ¶ 4). Ms. Clark did not include any of Plaintiff's current claims against Defendant in the section for suits and administrative proceedings on the sworn statement of financial affairs, or in the section for other contingent claims of every nature on the schedule of all

personal property she prepared for Plaintiff's bankruptcy filing (*see* Court File No. 28, Exh. D, E). Plaintiff's attorney in the present action, Bob E. Lype, first learned of his bankruptcy filing during Plaintiff's deposition in this matter on February 22, 2005; Plaintiff states he did not discuss it with Mr. Lype because he did not understand it would be relevant to this lawsuit (Aziz Aff. 2 ¶ 5). Ms. Clark was indicted in March 2004 and recently pleaded guilty to bankruptcy fraud in this court (Case No. 1:04-CR-57). Plaintiff has retained a substitute attorney for Ms. Clark, Sandra Y. Benton, whom he contacted about amending his bankruptcy filing to include his claims in this lawsuit after his deposition (*Id.* ¶¶ 7, 8). Ms. Benton has prepared and Plaintiff has signed amended bankruptcy schedules including this lawsuit, which Plaintiff represents Ms. Benton is filing with the bankruptcy court (*Id.* ¶ 8, *see also* exhibit thereto).

Plaintiff filed the instant lawsuit on April 19, 2004, alleging Defendant discriminated against him on the basis of his national origin and age and retaliated against him for protected conduct, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1991, 42 U.S.C. § 1981 (Court File No. 1).

## III.    DISCUSSION

### A.    Motion to Dismiss

#### 1.    Judicial Estoppel

Defendant in its motion to dismiss first argues Plaintiff should be judicially estopped from asserting the claims in this suit because he did not disclose them in his bankruptcy proceedings as an asset, although he filed his bankruptcy petition after filing a charge of discrimination with the

THRC and EEOC (*see* Court File No. 28, Exh. A) and has been in bankruptcy proceedings for a significant time period since filing the instant lawsuit. Plaintiff responds he did not intentionally mislead the bankruptcy court, but rather disclosed his claim against Defendant to his bankruptcy attorney, who told him it did not need to be included on the statement of financial affairs, and he relied on her expertise in this matter (Aziz Aff. 2 ¶¶ 2-4, 6). Further, Plaintiff notes he has filed amendments in his Chapter 13 case to reflect the instant lawsuit as an asset (*see* exhibits to *id.).* Therefore, Plaintiff argues, any failure to disclose this claim to the bankruptcy court was inadvertent at worst, and the doctrine of judicial estoppel should not prevent this case from going forward.

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749, 149 L. Ed. 2d 968, 121 S. Ct. 1808 (2001) (*quoting Pegram v. Herdrich*, 530 U.S. 211, 227 n.8, 147 L. Ed. 2d 164, 120 S. Ct. 2143 (2000)). This doctrine "preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2003) (internal quotation omitted).

The Supreme Court has identified three considerations that are typically relevant in determining whether judicial estoppel should apply: (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceedings would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at

750-51 (internal quotations and citations omitted). In *Browning*, the United States Court of Appeals for the Sixth Circuit, focusing on the first two factors identified in *New Hampshire*, described judicial estoppel as barring a party from "(1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." 283 F.3d at 775 (internal quotation omitted).

The Bankruptcy Code requires a debtor to file "a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs." 11 U.S.C. § 521(1). There is no question a cause of action is an asset that must be scheduled under section 521(1). *See Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004); *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001). In addition, "the duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action." *Browning Mfg. v. Mims* (*In re Coastal Plains, Inc.*), 179 F.3d 197, 208 (5th Cir. 1999) (quotation omitted); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988) ("Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized.").

Defendant argues Plaintiff has met the two factors elaborated in *Browning* for judicial estoppel of his claims because he (1) now asserts a position contrary to one that he asserted under oath in a prior proceeding, by asserting claims he swore he did not have in the statement of financial affairs and schedule of personal property; and (2) the bankruptcy court adopted the contrary position in its order confirming his Chapter 13 bankruptcy plan (*see* Exh. D, F to Court File No. 28). As to the first factor, the Sixth Circuit has held pursuing a cause of action not disclosed as an asset in a bankruptcy filing creates an inconsistency sufficient to support judicial estoppel. *See Eubanks*, 385

F.3d at 898; *Browning*, 283 F.3d at 775. The Sixth Circuit also has held an order confirming a Chapter 13 plan adopts the debtor's statement he had no potential causes of action, and will support a finding the second factor is met. *See Reynolds v. Commissioner,* 861 F.2d 469, 473 (6th Cir. 1988). Therefore, Plaintiff's actions meet the two prerequisites for the Court to apply the doctrine of judicial estoppel to his claims.

However, the Sixth Circuit has recognized a "good faith defense" from judicial estoppel where a debtor relied on his bankruptcy attorney's advice in not listing a claim as an asset in his bankruptcy filings, but had no intent to hide the claim from the bankruptcy court. This defense derives from the idea judicial estoppel does not apply where the prior inconsistent position occurred because of "mistake or inadvertence." *Browning*, 283 F.3d at 776; *see also New Hampshire*, 532 U.S. at 753 ("We do not question that it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake.") (internal quotation omitted). In *Browning*, the Sixth Circuit adopted the approach taken by the United States Court of Appeals for the Fifth Circuit in *In re Coastal Plains, Inc. See Browning*, 283 F.3d at 776. Under this approach, the failure to disclose a cause of action may be deemed inadvertent where (1) "the debtor lacks the knowledge of the factual basis of the undisclosed claims," or (2) "the debtor has no motive for concealment." *Browning*, 283 F.3d at 776 (*citing In re Coastal Plains, Inc*., 179 F.3d at 210). The Sixth Circuit subsequently held in *Eubanks* even if the debtor had knowledge of a potential cause of action and a motive to conceal it, if the plaintiff did not actually conceal it and later took affirmative steps to fully inform the trustee and the bankruptcy court of the action, it is highly unlikely the omission in the bankruptcy petition was intentional. *See Eubanks*, 385 F.3d at 895-99.

In *Eubanks*, the debtors presented evidence they (1) notified the bankruptcy trustee of the claim during a meeting; (2) asked the trustee on several occasions over several months whether he

intended to pursue the claim on behalf of the estate; (3) moved the bankruptcy court for a status conference on the issue of the claim; (4) unsuccessfully moved to allow the trustee to be substituted for themselves in the action after the action was filed and after the trustee refused to abandon the claim in the bankruptcy proceeding; and (5) filed an amendment to their original bankruptcy petition to add the claim to their bankruptcy schedules after the defendant filed a motion to dismiss on the basis of judicial estoppel. *See* 385 F.3d at 895-97.

Plaintiff argues his actions since this issue came to his attention during his deposition, confirm his lack of intent to deceive the bankruptcy court. Plaintiff, who has no training in bankruptcy law, disclosed his claim to his first bankruptcy attorney, Ms. Clark, and relied on her in good faith to prepare a truthful and accurate bankruptcy filing (Aziz Aff. 2 ¶¶ 2-4). Ms. Clark then apparently decided not to disclose this pending claim to the bankruptcy court in Plaintiff's filings (*see id.* ¶ 4). The criminal history of this particular bankruptcy attorney that has recently come to light bolsters Plaintiff's assertion of inadvertence on his part in any deception on the bankruptcy court.[1] Further, after this issue came to light in his deposition, Plaintiff contacted his new bankruptcy attorney, Ms. Benton, to amend his bankruptcy filings to reflect this lawsuit as a

_____

[1] The Sixth Circuit in a recent case rejected a plaintiff's claim of good faith reliance on an attorney's actions in the judicial estoppel context, holding under *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34, 8 L. Ed. 2d 734, 82 S. Ct. 1386 (1962), a litigant generally is bound by the errors of his or her attorney. *See Lewis v. Weyerhaeuser Co.*, 2005 U.S. App. LEXIS 13598 (6th Cir. 2005) (*quoting Link*, 370 U.S. at 633-34 ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.")). The court in *Lewis* held the plaintiff "presents no compelling reason to justify departing from the general rule set forth in *Link* that litigants are bound by the actions of their attorneys." *Id.* at * 22. The Court finds this case is distinguishable from *Lewis*, mainly because of the Court's knowledge of the character and history of bankruptcy fraud by Plaintiff's attorney Ms. Clark, which would make holding Plaintiff accountable for her decision not to disclose the instant claims on his filings particularly unjust. Further, the Court finds no evidence of bad faith by Plaintiff here, which was a persuasive factor in the *Lewis* court's decision to apply judicial estoppel in that case. *See id.* at * 26.

12

contingent claim (*Id.* ¶ 8). Defendant has submitted copies of the amended documents, which he and his wife signed on May 16, 2005, and he represents Ms. Benton is filing them with the bankruptcy court (*see id., see also* exhibit thereto).

While Plaintiff's actions are certainly not as extensive as those the Court in *Eubanks* found to support a finding of no intent to deceive the bankruptcy court, they are still sufficient to support such a finding here, particularly where there is no evidence in the record of deception or bad faith. *See generally Eubanks*, 385 F.3d at 895-97; *see also Lewis v. Weyerhaeuser Co*., 2005 U.S. App. LEXIS 13598 (6th Cir. 2005) (finding judicial estoppel appropriate where plaintiff never sought to amend bankruptcy schedules, filed a motion, or made any attempt to inform the bankruptcy court or trustee of pending discrimination action; had not shown she should not be held responsible for her attorney's failure to include claim in bankruptcy filings; and other facts, such as failure to include income from her most recent employer in bankruptcy filings, supported finding of bad faith and showed intent to deceive). Judicial estoppel is not appropriate in this case.

Therefore, Defendant's motion to dismiss on the ground of judicial estoppel will be **DENIED**.

### 2. Standing

Defendant next argues, if Plaintiff is not judicially estopped from bringing his claims, he lacks standing to bring them because the claims belong to the bankruptcy estate, *see* 11 U.S.C. § 541(a)(1), and therefore the bankruptcy trustee is the exclusive proper party to bring this action. However, Defendant concedes the "Sixth Circuit has not yet ruled on whether the trustee in a Chapter 13 bankruptcy has exclusive standing to pursue causes of action," instead citing several district court cases from other circuits in support of this argument (*see* Court File No. 28 at 6). The Court in its own research has been unable to uncover any Sixth Circuit precedent to support

Defendant's position. The Court will not reject Plaintiff's claims on this ground based solely on the non-binding precedent to which Defendant cites. Therefore, the Court will **DENY** Defendant's motion to dismiss for Plaintiff's lack of standing.

### B.     Motion for Summary Judgment

#### 1.     Statute of Limitations

Defendant in its motion for summary judgment first argues Plaintiff is barred from asserting any claims based on alleged adverse employment actions that took place outside the statute of limitations time period.

A plaintiff alleging employment discrimination on the basis of age or national origin under the ADEA or Title VII must file a timely charge of discrimination with the EEOC before bringing suit in federal court. 29 U.S.C. § 626(d); 42 U.S.C. § 2000e-5(e)(1); *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001). In a "deferral state" such as Tennessee, which has state laws prohibiting age and national origin discrimination, a plaintiff's claim will be dismissed as untimely if it is not included in a charge filed with the EEOC within 300 days of the alleged discriminatory action. *See Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 375-76 (6th Cir. 2002); 29 U.S.C. § 626(d); *see also* Tenn. Code Ann. § 4-21-101. The 300-day time period begins to run when the employee is notified of the alleged discriminatory act. *Amini*, 259 F.3d at 498-500.

Plaintiff filed his charge of discrimination with the THRC and EEOC on December 16, 2003.[2] The 300-day period here thus includes any allegedly discriminatory actions by Defendant

---

[2]The parties repeatedly cite "October 2003 "as the date Plaintiff filed his charge of discrimination with the EEOC and THRA (*see* Court File No. 1, Complaint, ¶ 22; Court File No. 32 at 9; Court File No. 42 at 5). The Court finds nothing in the record, however, to support this assertion, and the form signed by Plaintiff is dated December 15, 2003 and is stamped "Received" by the EEOC on December 16, 2003 (*see* Exh. to Court File No. 33, marked Exh. 24 to Aziz Depo.). Therefore, December 16, 2003 is the date the Court will use as the basis for its statute of limitations

taking place on or after February 19, 2003. Plaintiff's THRC and EEOC charge included allegations of discrimination and retaliation for protected conduct in relation to a demotion in January 2003, transfer to a smaller, less profitable store in June 2003, and lack of a pay raise since 2002 (*see* Exh. to Court File No. 33, marked Exh. 24, 26 to Aziz Depo.). The only allegedly discriminatory actions in the THRC and EEOC charge that fall within the statutory time period therefore are the transfer to a smaller store in June 2003 and a continuing failure to raise his pay. Since neither party asserts *when* any failure to give Plaintiff a pay raise during 2003 occurred, the Court cannot grant summary judgment on any claim based on this failure on statute of limitations grounds. Therefore, Defendant's motion for summary judgment is hereby **GRANTED** as to all claims of discrimination or retaliation Plaintiff asserts under the ADEA or Title VII based on Defendant's alleged actions prior to February 19, 2003.

Additionally, the statute of limitations for claims brought pursuant to 42 U.S.C. § 1981, under which Plaintiff also asserts claims of discrimination, is one year. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 464 (6th Cir. 2001); Tenn. Code Ann. § 4-21-311(d). This statutory period is not tolled by filing administrative claims with the EEOC. *See Wade*, 259 F.3d at 464. Therefore, Plaintiff may pursue any claims based on discriminatory actions Defendant took one year prior to his filing this lawsuit on March 25, 2004. The only actions Plaintiff alleges by Defendant that occurred during this time period are the same as those the Court determined fell within the Title VII and ADEA statutes of limitation, the transfer to a smaller store in June 2003 and a continuing failure to raise his pay. Therefore, although Defendant did not explicitly raise this issue in its motion for summary judgment, since it did raise it as an affirmative defense in its answer (*see* Court File No.

_____

analysis, rather than the October 2003 date on which the parties rely.

4, p. 8), the Court will **DISMISS** all of Plaintiff's claims under 42 U.S.C. § 1981 based on Defendant's alleged actions prior to March 25, 2003. *See Kari v. Detroit Bd. of Educ.*, 2000 U.S. App. LEXIS 23497 (6th Cir. 2000) (*citing Haskell v. Washington Township*, 864 F.2d 1266, 1273 n.3) (6th Cir. 1988) (upholding district court's *sua sponte* dismissal of claims clearly barred by the statute of limitations on the face of the plaintiff's complaint).

Plaintiff asserts three separate claims in his complaint; the Court will deal with each in turn.

### 2.        Discrimination on the Basis of Age

Plaintiff concedes he has no direct evidence of discrimination on the basis of his age by his employer (Court File No. 42 at 7). Therefore, he proceeds under a circumstantial evidence framework to prove his employer discriminated against him. The same analytical structure applies to Plaintiff's claims under the ADEA and under 42 U.S.C. § 1981, so the Court will analyze then together. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). Where a plaintiff attempts to establish an age-discrimination claim using circumstantial rather than direct evidence of discrimination, the Court applies the three-part test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). *See Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003), *cert. denied*, 541 U.S. 1010, 158 L. Ed. 2d 620, 124 S. Ct. 2069 (2004). Under the *McDonnell Douglas* test, the plaintiff must first carry the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination by the employer. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).

If a plaintiff successfully establishes a prima facie case, the burden of production then shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981) (internal quotation marks and citation omitted). If the employer carries this burden,

then the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." *Id.* While the burden of production shifts throughout this test, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the plaintiff always remains with the plaintiff. *Id.*

### a.      Plaintiff's Prima Facie Case

An employee establishes a prima facie case of discrimination on the basis of age by proving: (1) he was over forty; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a substantially younger employee, or additional evidence shows that the employer was motivated by his age in making the decision to demote him. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 310, 134 L. Ed. 2d 433, 116 S. Ct. 1307 (1996).

Defendant first argues Plaintiff cannot meet the third element of his prima facie case, that he suffered an adverse employment action. Because the Court found all of Plaintiff's claims based on the demotion he received in January 2003 are time-barred, the Court can consider only the reassignment to a smaller store in June 2003 and failure to give him a raise in 2003 as potential adverse employment actions.

An adverse employment action is a "materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir.1996). This element is required as part of the prima facie case "prevent lawsuits based upon trivial workplace dissatisfactions." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (en banc). For a change in employment conditions to be "materially adverse," therefore, it "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* at 886. (*quoting Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136

(7th Cir. 1993)).  Further, "de minimis employment actions" or a "bruised ego" are not sufficient to constitute an adverse employment action.  *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000); *White*, 364 F.3d at 797 (*quoting Kocsis*, 97 F.3d at 886).  Additionally, "a plaintiff's subjective impression concerning the desirability of one position over another generally does not control with respect to the existence of an adverse employment action."  *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177 (6th Cir. 2004) (*citing Policastro v. Northwest Airlines, Inc.* 297 F.3d 535, 539 (6th Cir. 2002); *Henry v. Ohio Dep't of Mental Retardation & Dev. Disabilities*, 162 F. Supp. 2d 794, 801 (S.D. Ohio 2000); *Kocsis*, 97 F.3d at 886).  Common examples of adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."  *Kocsis*, 97 F.3d at 886 (*quoting Crady*, 993 F.2d at136).

A transfer at no loss of title, pay or benefits does not amount to an adverse employment action.  *See id.* at 885, 886; *Policastro*, 297 F.3d at 539.  However, a transfer or reassignment may rise to the level of constructive discharge, and constitute an adverse employment action, where its conditions are objectively intolerable to a reasonable person.  *See Kocsis*, 97 F.3d at 886 (*discussing Darnell v. Campbell County Fiscal Court*, 1991 U.S. App. LEXIS 1755 (6th Cir. 1991)).  Increased distance from home to a new position is one factor in determining whether a constructive discharge has occurred.  *Id.*; *accord Darnell*, 1991 WL 11255 at *3.  It is undisputed the smaller store to which Plaintiff was transferred was located only 2.5 miles from his previous store (Volz Depo. at 209), therefore increased distance to the smaller store is not a dispositive factor in this analysis. Plaintiff's statement the store to which he was transferred was "smaller, had lower sales volume, was very dirty, lacked adequate merchandise, was not making money, and was known to be 'about to go

out of business'" (Aziz Aff. 1 at ¶ 12) does not support a finding the transfer amounted to a constructive discharge because the conditions of his employment at the smaller store were objectively intolerable to a reasonable person.  *See Kocsis*, 97 F.3d at 886.

Further, Plaintiff has not shown the transfer altered the "terms or conditions" of his employment, such as job responsibilities, pay, or benefits.  *Kocsis*, 97 F.3d at 885.  Plaintiff does not allege his job responsibilities, salary, or benefits changed with this transfer, but he does state this transfer "had the potential to cost me opportunities for store manager performance bonuses.  The store which I was leaving, and which had more volume and was in better condition, offered a better opportunity for bonuses" (Aziz Aff. 1 ¶ 14).  Defendant counters the smaller store had the potential for a "big bonus" (Volz Depo. at 207), because store manager bonuses are based on improvements in store sales over the previous year's sales, and the smaller store had a poor sales history.  Therefore, Defendant argues, any small improvement in the smaller store's sales would garner Plaintiff a bonus (Court File No. 41 at 9).  Plaintiff responded to this argument by asserting "[w]hile in theory, [Plaintiff] could have achieved bonus pay in the smaller, dirtier store on the same level as he might have achieved in the nicer, newer, bigger store . . . in reality the conditions of this store were a hindrance to sales" (Court File No. 42 at 17-18).

Plaintiff bears the burden of proof on this element of his prima facie case, yet he provides no support for his argument.  Plaintiff has not even alleged he has received lower bonuses while employed as manager of this smaller store, where he remains store manager, than when he managed the larger store, much less admissible, probative evidence on this point such as a compensation statement.  In fact, in a portion of Plaintiff's deposition to which neither party cited, Plaintiff stated, "as a store manager, yes, I'm achieving my goals for [the smaller store] and I'm making bonuses every month" (Aziz Depo. at 59).  A nonmoving party on summary judgment but must come

forward with some significant probative evidence to support its claim; it is not entitled to a trial merely on the basis of allegations. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Plaintiff's mere assertion the transfer had the "potential" to cause him to lose bonus compensation, without any evidence about his actual bonus compensation falling during the more than two years during which he actually has been working in the smaller store, does not permit the Court to hold this transfer was a "materially adverse change in the terms or conditions of . . . employment." *Kocsis*, 97 F.3d at 885.

Neither party discussed Defendant's failure to give Plaintiff a pay raise in 2003 in their briefs as an adverse employment action, thus the Court does not have the necessary facts to evaluate whether it qualifies as an adverse employment action under the framework set out above.

Therefore, because Plaintiff has not been able to meet his burden of proof on an essential element of his prima facie case by failing to show he suffered any adverse employment action, the Court will **GRANT** Defendant summary judgment on his claims of age discrimination under the ADEA and 42 U.S.C. § 1981. *See Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

### 2. Claims of Discrimination on the Basis of National Origin and Retaliation for Protected Activity

The same analytical structure applies to Plaintiff's claims under Title VII and under 42 U.S.C. § 1981, therefore the Court will evaluate them jointly. *See Mitchell*, 964 F.2d at 582. In order to prevail on either his claim of discrimination based on national origin or retaliation for protected activity, Plaintiff must show Defendant took an adverse employment action against him. *See DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004) (prima facie case for national origin discrimination claim includes adverse employment action); *Little v. BP Exploration & Oil Co*., 265 F.3d 357, 363 (6th Cir. 2002) (*citing Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000)) (prima facie case for retaliation claim requires showing adverse employment action).

Because, as analyzed above, Plaintiff has not shown he suffered any adverse employment action by Defendant, he has not met his burden of proof on an essential element of these claims, and the Court also will **GRANT** Defendant summary judgment on Plaintiff's claims of discrimination and retaliation under Title VII and 42 U.S.C. § 1981. *See Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

## IV.    CONCLUSION

For the foregoing reasons, the Court will **DENY** Defendant's motion to dismiss (Court File No. 27), **GRANT** Defendant's motion for summary judgment (Court File No. 32), and **DISMISS** all of Plaintiff's claims.  The Court further will direct the Clerk to **CLOSE** the case.

**/s/**
_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**
